## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DISTRICT OF COLUMBIA WATER     *
AND SEWER AUTHORITY,

        *

     Plaintiff,

        *

v.

        *         Civil No. 23-01328-BAH

SAMAHA ASSOCIATES, PC et al.,

        *

     Defendants.

        *

*    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

Plaintiff District of Columbia Water and Sewer Authority ("DC Water") brought suit against Samaha Associates, PC ("Samaha"), Adtek Engineers, Inc. ("Adtek"), and ECS Mid-Atlantic, LLC ("ECS" and collectively "Defendants") alleging negligence and breach of contract claims related to the Defendants' assessment of environmental conditions on a property acquired by DC Water. ECF 30 (First Amended Complaint) ¶ 1. Pending before the Court are two motions to dismiss brought by Adtek and ECS (the "Subcontractor Defendants"). ECFs 38, 39. DC Water filed an opposition, ECF 42, and Adtek and ECS filed replies, ECFs 48, 49. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Count I is **WITHDRAWN**. ECS's motion to dismiss Count II is **GRANTED**, and Adtek's motion to dismiss Count II is **GRANTED**.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.   BACKGROUND

This action arose because DC Water sought to construct a Fleet Maintenance Facility (the "Project") and hired Samaha to conduct architectural and engineering related services on the Project (the "DC Water/Samaha Contract"). ECF 30 ¶ 12. DC Water then began considering the purchase of a property located at 6020 Walker Mill Road, Capitol Heights, MD 20743 (the "Property"). *Id.* ¶ 1. Samaha's contractual obligations to DC Water included that Samaha would "perform or obtain a Phase I Environmental Site Assessment" ("Phase I ESA"), in order to determine if the Property was "suitable for its intended purposes." *Id.* ¶ 14. Thereafter, Samaha "contracted the Phase I ESA duty out" to Adtek ("Samaha/Adtek Subcontract"). *Id.* ¶ 15. Adtek then contracted the Phase I ESA out to ECS ("Adtek/ECS Subcontract"). *Id.*

ECS completed the assessment on November 13, 2014, and compiled its findings in a report ("the Report"). *Id.* ¶ 16. ECS affirmed that its assessment of the Property met "the requirements of ASTM E 1527-13, Standard Practice for Environmental Site Assessments: Phase I Environmental Site Assessment Process and EPA Standards and Practices for All Appropriate Inquiry contained in 40 CFR Part 312." *Id.* ¶ 17. The Report indicated that there was "no evidence of recognized adverse environmental conditions" at the Property and that it was "suitable for its intended purpose." *Id.* ¶¶ 2, 20. The Report further indicated that the Property appeared to have been in a "continuous[ly] undeveloped state" from 1938 to the date of the Report. *Id.* ¶ 18 (alteration in original). Thus, while the Report acknowledged that "historical data gaps" existed, it indicated that the gaps were "not expected to impact [ECS's] ability to render a professional opinion regarding the subject site." *Id.* ¶ 19 (alteration in original).

DC Water alleges that it relied on the Report and on May 27, 2015, DC Water purchased the Property from Broad Creek Conservancy, Inc. for $699,000. *Id.* ¶ 21. DC Water then contracted with Hess Construction Company, LLC, ("Hess") to serve as the general contractor for

the construction of a facility on the Property. *Id.* ¶ 22. On June 20, 2020, Hess began performing

construction on the Property. *Id.* ¶ 23. "As the construction proceeded, Hess encountered

environmental conditions that disrupted the work and required remediation, including among other

things, buried debris and waste." *Id.* ¶ 24.

Ultimately, the environmental conditions caused DC Water to incur damages, "including,

but not limited to, increased construction costs, the need to remove and replace unsuitable soils

and debris, associated environmental testing, and construction delays." *Id.* ¶ 25. DC Water alleges

that if ECS had performed the Phase I ESA in accordance with the applicable standard of care, it

would have discovered numerous adverse environmental conditions and notified DC Water in its

Report. *Id.* ¶ 27. Had DC Water known of the conditions, "it could have incorporated those facts

into its decision to purchase the Property and in its planning, design, and budgeting for the Project."

*Id.* ¶ 28. The existence of adverse environmental conditions at the Property also could have

affected DC Water's decision to purchase the Property or look for different, more suitable land on

which to construct its facility. *Id.* ¶ 29. DC Water filed its Complaint alleging negligence against

all Defendants (Count I), and breach of contract against the same (Count II). ECF 1, at 5, 7.[2]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim

upon which relief can be granted." In considering a motion under this rule, courts discount legal

---

[2] Adtek and ECS both filed motions to dismiss DC Water's initial complaint. *See* ECFs 25 (filed by ECS), 27 (filed by Adtek). Subsequently, DC Water filed its First Amended Complaint, ECF 30, and Adtek and ECS filed the motions discussed in this opinion. ECFs 38, 39. As such, ECF 25 and ECF 27 are mooted by DC Water's Amended Complaint and thus are **DENIED** as moot. *Dykes v. Portfolio Recovery Assocs., LLC*, 306 F.R.D. 529, 530 (E.D. Va. 2015) (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001)) ("It is well settled that an amended pleading supersedes the original, and motions directed at superseded pleadings must be denied as moot."), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015), *as recognized in Short v. Hartman*, 87 F.4th 593, 610 (4th Cir. 2023); *Brent v. City of Cumberland Police Dep't*, Civ. No. JKB-22-1349, 2023 WL 2457591, at *5 (D. Md. Mar. 10, 2023).

conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.,* 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly,* 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.,* 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan,* 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis omitted) (citation omitted). In this case, the Court considers the Samaha/Adtek Subcontract and the Adtek/ECS Subcontract as "integral" because these underlying subcontracts give rise to DC Water's breach of contract claims against Adtek and ECS. *See, e.g., Thaler v. Donald J. Trump for President, Inc.,* 304 F. Supp. 3d 473, 477 n.5 (D. Md. 2018), *aff'd,* 730 F. App'x 177 (4th Cir.

2018) ("A contract is integral to a breach of contract claim[] . . . ."); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("[I]f a breach-of-contract plaintiff alleges a failure to perform an act required by the contract, the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization.").

Here, Plaintiff and Subcontractor Defendants treat the Samaha/Adtek Subcontract and the Adtek/ECS Subcontract as integral and incorporated in the Complaint. *See* ECF 42, at 8 (quoting heavily from both subcontracts to demonstrate DC Water is an intended beneficiary to the subcontracts and to establish a right to sue in contract despite the lack of privity); ECF 48, at 3–6 (quoting heavily from the Samaha/Adtek Subcontract to argue DC Water lacks a right to sue in contract as a matter of law); ECF 49, at 3 n.2 (quoting from the Adtek/ECS Subcontract to argue DC Water's contract claim fails due to lack of privity). Given DC Water's express invocation of both subcontracts, and the integral nature of the subcontracts to this breach of contract claim, the Court will consider the documents to be incorporated. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks and citation omitted)); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include . . . documents that, although not incorporated by reference, are "integral" to the complaint[.]"); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) and *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) with approval).

5

## III.   DISCUSSION

Adtek and ECS individually move for dismissal of all counts against them.[3]  ECFs 38, 39. In DC Water's Response in Opposition to Adtek's and ECS's motions to dismiss, DC Water elected to withdraw its negligence claim against both parties.[4]  ECF 42, at 2, 5.  As such, Count I is withdrawn against Adtek and ECS.  The Court will confine its analysis to DC Water's breach of contract claims.  For the reasons below, the Court finds DC Water has failed to allege a breach of contract claim against either Adtek or ECS as a matter of law.

### A.   The subcontracts are prototypical examples of contracts that incidentally benefit a third party.

The parties' primary dispute concerns whether DC Water may sue Adtek and ECS for breach of contract when the parties are not in privity.  ECF 38-1, at 6–8; ECF 39-1, at 13–15; ECF 42, at 5–9.  While ordinarily privity "is necessary for [a] breach of express warranty claim," *Palmer v. CVS Health*, Civ. No. CCB-17-938, 2019 WL 6529163, at *6 (D. Md. Dec. 4, 2019), "[t]he third party beneficiary theory of recovery is a 'limited exception' to the strict privity rule of contracts." *Sherwood Brands, Inc. v. Levie*, Civ. No. RDB-03-1544, 2006 WL 827371, at *15 (D. Md. Mar. 24, 2006) (citing *Flaherty v. Weinberg*, 492 A.2d 618, 624 (Md. 1985)), *aff'd*, 2007 WL 4622915 (4th Cir. Dec. 28, 2007); *Gray Constr., Inc. v. Medline Indus., Inc.*, Civ. No. GLR-19-3405, 2020 WL 5816502, at *12 (D. Md. Sept. 30, 2020).

---

[3] Adtek also incorporates the reasons in ECS's motion to dismiss as additional reasons supporting dismissal of claims against Adtek.  ECF 38-1, at 8.

[4] Adtek and ECS argued in their briefs that DC Water's negligence claims against them fail as a matter of law due to the economic loss doctrine.  ECF 38-1, at 3–5; ECF 39-1, at 9–11.  The economic loss doctrine dictates that "a party cannot recover against another in tort where the resulting harm is purely economic loss and the parties have no contract between them." ECF 38-1, at 4 (quoting *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 130 A.3d 1024, 1035 (Md. 2016)).

Under Maryland law,[5] a third party may only enforce a contract "if the contract was intended for his [or her] benefit and it . . . clearly appear[s] that the parties intended to recognize him [or her] as the primary party in interest and as privy to the promise." *CX Reinsurance Co. Ltd. v. Johnson*, 282 A.3d 126, 135 (Md. 2022) (quoting *120 W. Fayette St., LLLP v. Mayor and City Council of Balt.*, 43 A.3d 355, 368 (Md. 2012)). In such circumstances, the third party is "referred to as an 'intended beneficiary.'" *Id.* (citing *120 W. Fayette St., LLLP*, 43 A.3d at 368). When it is not clearly apparent that the parties intended to recognize a party as privy to the promise, the party is an incidental beneficiary that may not enforce the promise. *Id.*

On this topic, the Supreme Court of Maryland commonly cites the Restatement (Second) of Contracts § 302(1) (Am. Law Inst. 1981) ("Restatement") with approval. *See CX Reinsurance Co. Ltd.*, 282 A.3d at 135; *Lovell Land, Inc. v. State Highway Admin.*, 969 A.2d 284, 298 (Md. 2009). Section 302 states:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>>
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement § 302 (Am. Law Inst. 1981). Section 302(1)(a) outlines a situation in which there is a creditor beneficiary. *See id.* § 302(1)(a); *see also Lovell Land, Inc.*, 969 A.2d at 295 (noting

---

[5] A federal court sitting in diversity applies the substantive law of the state in which it sits. *Megaro v. McCullum*, 66 F.4th 151, 159 n.4 (4th Cir. 2023) (citing *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004)). Accordingly, the Court applies Maryland's substantive law in considering the present motions.

"[c]ourts now generally recognize the right of a third-party beneficiary to sue on a contract made expressly for the benefit of either a donee beneficiary or a creditor beneficiary." (citation omitted)). Section 302(1)(b) is more broadly worded, but the most common circumstance falling within it is that of the donee beneficiary. *See Lovell Land, Inc.*, 969 A.2d at 295 (stating "a donee beneficiary [i]s one 'where it appears that the purpose of the promisee in obtaining the promise of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance'" (quoting *Mackubin v. Curtiss-Wright Corp.*, 57 A.2d 318, 321 (Md. 1948))).

The uniqueness of the donee beneficiary circumstance is illustrated in 4 Corbin on Contracts § 776:

> In third party cases, the right of such party does not depend upon the purpose, motive or intent of the promisor. The motivating cause of his making the promise is usually his desire for the consideration given by the promisee. In few cases will he be moved by a desire to benefit a third person. If A buys Blackacre from B and promises B to pay the price to C, he makes this promise in order to get Blackacre, not to benefit C; and this is true whether C is a creditor of B's or is B's dearly beloved daughter. . . .
>
> * * *
>
> How is it with the purposes and motives of the promisee? If B conveys Blackacre to A in return for A's promise to pay $1,000.00 to B's dearly beloved daughter C, it will usually be a desire to make C happy and comfortable that motivates B and causes him to convey his land to A. There is a purpose and intent to 'benefit' C by making her a gift of money. This 'intent to benefit' C is given weight by the courts and the prevailing law is that C has a right against A.

*Shillman v. Hobstetter*, 241 A.2d 570, 576 (Md. 1968) (quoting 4 Corbin on Contracts, § 776). This is certainly not the situation here. In this case, DC Water promised to pay $220,000 to Samaha and Samaha promised to provide a set of services. ECF 19-2, at 5–6. Samaha promised to pay Adtek $125,500 in exchange for Adtek providing certain services. *Id.* at 12. Then Adtek promised ECS $7,085.50 in exchange for ECS providing services. ECF 19-3, at 8. This general arrangement describes a standard subcontractor relationship. *Cf. BIS Computer Sols., Inc. v. City of Richmond*,

122 F. App'x 608, 612 (4th Cir. 2005) ("The nature of the contract between the [parties] is essentially analogous to any standard construction contract in which a property owner retains a contractor to complete a project, and the contractor hires subcontractors to assist in performing the contractor's work.").

The nature of the contract and its inclusion of express and delineated costs suggest that while the promisees at each stage in the chain of contracts performed a service that ultimately would benefit DC Water, the promisees performed their respective services *for the benefit of the consideration they received*—not due to a charitable intent for DC Water to be benefitted. *See id.* (finding a similar "standard" construction contract only incidentally benefitted the third-party plaintiff). Indeed, this type of standard construction contract is a paradigm circumstance in which a third party is only an incidental beneficiary. *See id.* (citing Restatement (Second) of Contracts ("Restatement"), § 302 cmt. e, illus 19 (Am. Law Inst. 1981)). Illustration 19 of the Restatement provides:

> A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building.

Restatement § 302 cmt. e, illus 19 (Am. Law Inst. 1981). In the above illustration, B provides lumber because B desires the consideration A has promised to give B—B is not providing lumber for a construction project out of the "desire to make C happy and comfortable." *Shillman v. Hobstetter*, 241 A.2d 570, 576 (Md. 1968) (quoting 4 Corbin on Contracts, § 776).[6]

Of course, parties may contract to grant third parties a right to enforce a contract, but such a right must be clearly established. *CX Reinsurance Co. Ltd.*, 282 A.3d at 135; *120 W. Fayette St.,*

---

[6] DC Water attempts to distinguish the facts of this case from Illustration 19 of the Restatement. ECF 42, at 7. However, distinguishing DC Water from the prototypical incidental beneficiary does little to affirmatively prove DC Water is an intended beneficiary.

*LLLP*, 43 A.3d at 368 ("It is not enough that the contract merely operates to an individual's benefit" rather, it must "clearly appear that the parties intended to recognize him [or her] as the primary party in interest and as privy to the promise." (alteration omitted)); *Shillman*, 241 A.2d at 575. Next, the Court discusses why both subcontracts fail to demonstrate that that such a right is clearly established.

**B.      The terms of both subcontracts do not plausibly allege that Adtek or ECS granted DC Water intended beneficiary status.**

"In applying this standard, [courts] look to the intention of the parties to recognize a person or class as a primary party in interest as expressed in the language of the instrument and consideration of the surrounding circumstances as reflecting upon the parties' intention[.]" *CX Reinsurance Co. Ltd.*, 282 A.3d at 135 (internal citations and quotation marks omitted) (quoting *CR-RSC Tower I*, 56 A.3d at 213). DC Water claims that both subcontracts demonstrate DC Water is an intended beneficiary because (1) DC Water is named in both subcontracts, and (2) the subcontracts incorporate terms and conditions of the DC Water/Samaha Contract. *See* ECF 42, at 8 (citing ECF 19-2, at 9, 16 and ECF 19-3, at 2, 5).

1.      DC Water is identified in both subcontracts only in a peripheral sense.

To begin, both subcontracts mention DC Water as part of the project name. *See id.* However, the mere mention of a third party in a contract is not dispositive on the issue of whether the third party is an intended or incidental beneficiary. *See, e.g.*, *CX Reinsurance Co. v. Levitas*, 207 F. Supp. 3d 566, 570 (D. Md. 2016) (granting motion to dismiss breach of contract claim when plaintiff unpersuasively argued she was an intended beneficiary of an insurance policy due to the contract "specifically identif[ying] her"), *aff'd sub nom. CX Reinsurance Co. Ltd. v. Loyal*, 691 F. App'x 130 (4th Cir. 2017). When considering whether a third party is an intended or incidental beneficiary, Maryland courts consider how central and apparent the third parties are in the contract.

10

*See CR-RSC Tower I, LLC*, 56 A.3d at 213 (holding that where a third party was mentioned "only briefly and in passing" and where the provisions were "peripheral" in nature and only "describe[d] the joint nature of the [] projects[,]" the third party was not an intended beneficiary).

Here, the Samaha/Adtek Subcontract mentions DC Water in the subject line of a cover letter of its proposal to complete services, and under the "Project Name/Location" header. ECF 19-2, at 9–10. The words "DC Water–Fleet Management Facility–Civil Engineering Services" appear, along with the address of the DC Water property. *Id.* The only other mention of DC Water appears when describing the scope of work, in a supplemental agreement attached as Exhibit A of the subcontract, among a list of over a dozen other bullet points. ECF 19-2, at 16. The supplement states Adtek's scope of work includes: "Develop[ing] a schematic design that meets the goals of DC Water and satisfies the requirements of Maryland national capital Park and Planning Commission (MNCPPC)." *Id.* Like the contract at issue in *CR-RSC Tower I, LLC*, the Samaha/Adtek Subcontract mentions the third party's name "only briefly and in passing." 56 A.3d at 213. The scope of work, appended in an exhibit amongst a dozen other goals, is peripheral in nature as the central promise of services is clearly the civil engineering services listed under "Basic Scope of Services." ECF 19-2, at 11 (outlining twelve services in the first section of the proposal, each service being underlined and numbered). Despite the peripheral mentions of DC Water in the proposal, it is clear that the promisee, Adtek, was providing a service to the promisor, Samaha, for the benefit of the consideration promised—namely $125,500. ECF 19-2, at 12.

The same conclusion applies as to the Adtek/ECS Subcontract, which bears even fewer mentions of DC Water. DC Water is mentioned only once in the "reference" line of a cover letter after the words "Proposal for Subsurface Exploration, Laboratory Testing, and Geotechnical Engineering Services, ~~Walker Mill Road Maintenance Facility~~, Capitol Heights, Maryland. DC

Water–Fleet Management Facility." ECF 19-3, at 5 (alteration in original).[7] There is no reference

obligating ECS to satisfy DC Water. *See* ECF 19-2. Again, despite the mention of DC Water in

the subject line, it is clear by reference to the detailed cost estimate that the promisee, ECS, was

providing services to the promisor, Adtek, for the benefit of the consideration listed—namely

$7,085.50. *Id.* at 2. *See CR-RSC Tower I, LLC*, 56 A.3d at 213 (holding that a third party

mentioned "only briefly and in passing" was not an intended beneficiary).

### 2.   DC Water's sole reliance on incorporation is insufficient when the Complaint lacks any specific allegations about the original Contract's terms.

Next, DC Water argues that the incorporation of the terms and conditions of the

overarching Contract into the subcontracts evince an intent to grant DC Water intended beneficiary

status. *See* ECF 42, at 8–9. Incorporation can, in some circumstances, be persuasive evidence of

an intent to grant intended beneficiary status. *See, e.g., Wal-Mart Stores, Inc. v. J.A. Fielden Co.*,

440 F. Supp. 2d 523, 526–27 (W.D. Va. 2006) (denying motion to dismiss where plaintiff was a

third-party to a contractor and subcontractor's contract because the plaintiff alleged that in

plaintiff's own contract with its contractor that it required all subcontractor agreements to bind all

subcontractors to perform the obligations "for the benefit of" plaintiff). However, incorporation

of a different parties' contract's terms is not dispositive. *See Hartford Accident & Indem. Co. v.

Scarlett Harbor Assocs. Ltd. P'ship*, 674 A.2d 106, 143 (Md. App. 1996) ("[T]he incorporation of

one contract into another contract involving different parties does not automatically transform the

incorporated document into an agreement between the parties to the second contract[,]' unless

there is "an indication of a contrary intention"), *aff'd*, 695 A.2d 153 (1997).

---

[7] The words "Walker Mill Road Maintenance Facility" are crossed out in 19-2, at 5, with the initials of Adtek President, Mahendra N. Shah, next to it. *See* ECF 19-3, at 3–5.

In this case, under the heading "Terms and Conditions," the Samaha/Adtek Subcontract states: "The Terms and Conditions of Samaha's contract with DC Water are part of this agreement with hourly rates specified in the attached Hourly Rate Schedule. Samaha will send the Terms and Conditions for the contract for Adtek's review and acceptance." ECF 19-2, at 13. DC Water does not, however, allege which incorporated terms grant it intended beneficiary status. *See* ECF 30. If, for example, the Contract between DC Water and Adtek stated that DC Water would be an intended beneficiary in all subcontracts, DC Water would have a much stronger case. *See, e.g.*, *Wal-Mart Stores, Inc.*, 440 F. Supp. 2d at 526–27 (holding plaintiff had raised a "valid question" sufficient to survive a motion to dismiss a breach of contract claim when making this allegation). Unlike *Wal-Mart Stores, Inc.*, DC Water makes no allegations about which terms and conditions in the Contract grant it intended beneficiary status. 440 F. Supp. 2d at 526–27; *see* ECF 30. Without allegations about the terms and conditions of the original Contract, the Court cannot say that the original Complaint between DC Water and Samaha, thereafter incorporated in the Samaha/Adtek Subcontract, demonstrates that Adtek intended to grant DC Water intended beneficiary status.

The same is true as to the Adtek/ECS Subcontract. In that subcontract, ECS proposed three pages of terms and conditions to Adtek, which Adtek crossed out. ECF 19-3, at 11–13. One of those crossed-out terms, under the title "Third Party Claims Exclusion," would have expressly denounced the existence of any third party intended beneficiary. ECF 42, at 9. All three pages[8] of terms and conditions were replaced with the following statement: "The Terms and Conditions

---

[8] If only this one subsection had been excised and replaced with language incorporating DC Water's Contract with Samaha, that would be stronger evidence of an intent to grant DC Water intended beneficiary status. However, here, where it is clear Adtek merely declined ECS's proposed terms wholesale in favor of adopting the terms of Samaha's contract with DC Water, the persuasiveness of this crossed-out provision is minimized.

with ADTEK's Client shall apply to this agreement. ADTEK will forward the Terms and Conditions after we receive them for your review and acceptance," with the Adtek President's signature beside it. ECF 19-3, at 11. Without alleging that the terms and conditions of the DC Water/Samaha contract required subcontractors to grant DC Water intended beneficiary status, the Court cannot say that the mere incorporation of the DC Water/Samaha Contract into the Adtek/ECS Subcontract demonstrates an intent to grant DC Water intended beneficiary status in that Subcontract.

The only allegation in the Complaint that discusses incorporation states: "The Samaha-ADTEK and ADTEK-ECS subcontracts incorporated the Contract and identified DC Water as the third-party for whose benefit the promised performances were to be made." ECF 30 ¶ 44. However, unlike the plaintiff in *Wal-Mart Stores, Inc.*, DC Water has not alleged that it required all subcontractors to incorporate terms that would bind them to perform their obligations for the benefit of DC Water. 440 F.Supp.2d at 526–27. While this Court must construe all reasonable inferences in favor of DC Water, it goes a step too far to infer that the underlying Contract's terms and conditions required DC Water to be an intended beneficiary to all subcontracts, when DC Water does not allege as much. *See* ECF 30, 42.

In sum, the Court finds that the language of both subcontracts does not evince an intent to grant DC Water intended beneficiary status. The promisees of the respective subcontracts appear to have made their promises to perform certain services, not for the benefit of DC Water, but for the benefit of the consideration attached to their respective service proposals. *See* ECF 19-2, at 12

14

(proposing a $125,500 fee in the Samaha/Adtek Subcontract), ECF 19-3 (proposing a $7,0850.50 fee in Adtek/ECS Subcontract).[9]

For the foregoing reasons, DC Water has failed to "nudge[]" its breach of contract claim across the line "from conceivable to plausible," *Twombly*, 550 U.S. at 570, and Count II must be dismissed.[10] *See Nat'l Labor Coll., Inc. v. Hillier Grp. Architecture N.J., Inc.*, 739 F. Supp. 2d 821, 836 (D. Md. 2010) (granting dismissal of intended beneficiary contract claim where a "standard contractor-subcontractor contracts" supported that plaintiff was an incidental beneficiary).

## C.   Leave to Amend

"The Fourth Circuit's policy is to liberally allow amendment." *Brathwaite v. Georgiades*, Civ. No. 23-00277-JRR, 2024 WL 838067, at *1 (D. Md. Feb. 28, 2024) (internal citation and quotation marks omitted) (quoting *Lavin v. Safeco Ins. Co. of Am.*, No. SAG 22-1788, 2022 WL 17342051, at *1 (D. Md. Nov. 30, 2022)); *see also Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010).   Therefore, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).   Subcontract Defendants argue that leave to amend would be futile. *See* ECF 39-1, at 20; ECF 38-1, at 8 (incorporating ECS's arguments); ECF 39-1, at 15.

---

[9] While a Court may consider surrounding circumstances, beyond the mention that DC Water directly communicated with the Subcontractor Defendants, DC Water does not specifically identify other circumstances that may be probative of the intent of the parties. *See* ECF 42.

[10] As the Court determines DC Water has failed to plausibly allege it is the intended beneficiary of either subcontract, the Court need not address Adtek's and ECS's alternative arguments that DC Water failed to plausibly allege proximate causation. *See* ECF 39-1, at 16–19 ECFs 38-1, at 8 (incorporating ECS's arguments in Adtek's motion).

The Court determines, however, that DC Water has not filed a proper motion for leave to amend. DC Water merely requested leave to amend his Complaint in one sentence in the first paragraph of his Response to Defendants' Motion to Dismiss and once in the last paragraph. *See* ECF 42, at 1, 12 (indicating only that Rule 15(a)(2) provides that courts should freely grant leave to amend when justice so requires). The only sentence that offers any substantive suggestion of the content of such a proposed amendment is the last sentence that "in light of all the facts discussed herein, such amendment would clearly not be futile." *Id.* at 12.

The Court fails to see how DC Water's discussion of factual allegations that are already included in the First Amendment Complaint may somehow demonstrate a lack of futility as it relates to new factual allegations. *See generally* ECF 42 (failing to allege any new factual allegations that could be added via amendment of DC Water's Complaint). DC Water's general request for leave to amend, without any indication of the substance of such an amendment, is plainly insufficient to constitute a motion for leave to amend pursuant to Rules 7(b) and 15(a) of the Federal Rules of Civil Procedure. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630– 31 (4th Cir. 2008) (holding district court did not abuse its discretion "by declining to grant a motion that was never properly made" where the plaintiffs requested leave to amend only in a footnote of their response to defendants' motion to dismiss and in one sentence of their objections to the recommendations of a magistrate judge's findings); *Weaver v. John Lucas Tree Expert Co.*, Civ. No. 13-01698-PMD, 2013 WL 5587854, at *2, 12 (D.S.C. Oct. 10, 2013) (holding Plaintiff failed to file a proper motion for leave to amend where "Plaintiff merely requested leave to amend his Complaint in one sentence in the first paragraph of his Response to Defendants' Motion to Dismiss and one in the last paragraph" in a breach of contract action); *see, e.g., United States ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("While Federal

16

Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C.Cir.1994))).

As the Court cannot ascertain DC Water's "grounds for seeking the order," the Court determines DC Water has not properly filed a motion for leave to amend. Fed. R. Civ. P. 7(b)(2). DC Water may file a motion that complies with Rule 7(b), if it so chooses, that outlines the proposed amendments with sufficient particularity that the Court may conduct a futility analysis. As currently presented, DC Water's request for leave to amend is denied.

## IV.    CONCLUSION

Count I is deemed **WITHDRAWN**. As such, ECS's and Adtek's motions to dismiss Count I is **DENIED** as moot. ECS's and ADTEK's motions to dismiss Count II are **GRANTED** without prejudice. ECS's and Adtek's prior motions to dismiss relating to the superseded complaint are hereby **DENIED** as moot. DC Water's request for leave to amend is **DENIED**. An implementing order will follow.


Dated: <u>April 9, 2024</u>                                           <u>/s/</u>
                                                        Brendan A. Hurson
                                                        United States District Judge