THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DISTRICT OF COLUMBIA WATER     \*
AND SEWER AUTHORITY,
                                                                  \*
      Plaintiff,
                                                                   \*
v.
                                                                   \*     Civil No. 23-01328-BAH
SAMAHA ASSOCIATES, PC, et al.,
                                                                   \*
      Defendants.
                                                                    \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

District of Columbia Water and Sewer Authority ("DC Water") brought suit against Samaha Associates, PC ("Samaha"), Adtek Engineers, Inc. ("Adtek"), and ECS Mid-Atlantic, LLC ("ECS" and collectively "Defendants") seeking compensatory damages related to Defendants' assessment of environmental conditions on a property DC Water acquired. ECF 30 (First Amended Complaint) ¶ 1. Subsequently, Cross-Plaintiff Samaha sued Cross-Defendants Adtek and ECS, ECF 37 ("Samaha's Crossclaim"). Pending before the Court are two motions to dismiss, brought by Adtek and ECS seeking dismissal of certain counts in Samaha's Crossclaim. ECFs 45, 46. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, ECFs 45 is **GRANTED in part** and **DENIED in part**, and ECF 46 is **GRANTED**.

I.     **BACKGROUND**

Samaha, Adtek, and ECS have each been named as Defendants in DC Water's Complaint. ECF 37 (First Amended Complaint) ¶ 1. This action arose because DC Water

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

sought to construct a Fleet Maintenance Facility (the "Project"), *id.* ¶ 4, and hired Samaha to conduct architectural and engineering related services on the Project (the "DC Water/Samaha Contract"). *Id.* ¶ 3. One of Samaha's responsibilities included performance of a Phase I Environmental Assessment ("Phase I ESA"). *Id.* ¶ 4 (citing ECF 30 ¶¶ 13–14). Samaha contracted the Phase I ESA duty to Adtek (the "Samaha/Adtek Subcontract") and Adtek is alleged to have contracted the Phase I ESA to ECS (the "Adtek/ECS Subcontract"). *Id.* ¶ 5 (citing ECF 30 ¶ 15).

ECS performed the Phase I ESA and compiled its findings in a report (the "Report") on November 13, 2014. *Id.* ¶ 6 (citing ECF 30 ¶ 16). Based on ECS's Report, DC Water purchased a property for the Project for $699,000. *Id.* ¶ 7. In 2020, adverse environmental conditions were discovered and DC Water alleges it incurred significant Project-related damages. *Id.* ¶ 9 (citing ECF 30 ¶¶ 23, 24)

> The DC Water/Samaha Contract contained an indemnification clause, that read:
>
> The Consultant shall indemnify and save harmless the Authority and all of its officers, directors, agents, servants and employees against any and all claims or liability arising from or based on, or as a consequence or result of, any negligent act, error, omission or fault of the Consultant, its employees, or its subcontractors in the performance of, or connection with any services required, contemplated, or performed under this Agreement; and the Consultant shall indemnify and save harmless the Authority and all of its officers, directors, agents, servants and employees, against any and all claims or liability arising from or based on, or as a consequence or result of, any act of approval, inspection, supervision, or acceptance, or any failure to approve, inspect, supervise or accept, by the Authority and any of its officers, directors, agents, servants or employees, where the act of approval, inspection, supervision, or acceptance, or failure to approve, inspect, supervise or accept, causes or contributes to any negligent act, error, omission, or fault of the Consultant, its employees, or its subcontractors in the performance of, or in connection with any services required, contemplated or performed under the Agreement; further the Consultant shall indemnify and save harmless the authority and all of its officers, directors, agents, servants and employees against any and all claims or liability a rising from or based on, or as a consequence or result of, the breach of any material provision of this Agreement. Monies due or to become due to the Consultant under the agreement may be

2

retained by the Authority as necessary to satisfy any outstanding claim which the Authority may have against the Consultant regardless of whether or not any damage resulting from the Consultant, its employees, or its subconsultants acts, omissions or default is caused in part by the Authority.

*Id.* ¶ 16. Samaha alleges that in the DC Water/Samaha Contract the term "Authority" referenced DC Water and the term "Consultant" referenced Samaha. *Id.*

Samaha alleges that when it entered into the Samaha/Adtek Subcontract, the terms and conditions of the DC Water/Samaha Contract (including its indemnification clause) were incorporated into the Samaha/Adtek Subcontract. *Id.* ¶ 19 (citing ECF 19-2, at 13). When Adtek contracted with ECS, Samaha alleges the terms and conditions of the DC Water/Samaha Contract (including its indemnification clause) were incorporated into the Adtek/ECS Subcontract. *Id.* at ¶ 21.

Samaha alleges that "the flow down of the terms and conditions" means that "Adtek and ECS are obligated to indemnify and save harmless Samaha from claims and liability arising from Adtek's and ECS's services." *Id.* ¶ 22.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

3

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

In considering the present motions, the Court construes the Samaha/Adtek Subcontract, as well as the Adtek/ECS Subcontract, as integral. ECF 19-2 (Samaha/Adtek Subcontract); ECF 19-3 (Adtek/ECS Subcontract). Generally, a contract is integral in a breach of contract dispute. *See, e.g., Thaler v. Donald J. Trump for President, Inc.*, 304 F. Supp. 3d 473, 477 n.5 (D. Md. 2018) ("A contract is integral to a breach of contract claim[] . . . ."), *aff'd*, 730 F. App'x 177 (4th Cir. 2018); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("[I]f a breach-of-contract plaintiff alleges a failure to perform an act required by the contract, the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization."). Here, Samaha attached as exhibits all three relevant contracts. *See* ECF 19-1 (DC Water/Samaha Contract), ECF 19-2 (Samaha/Adtek Subcontract), ECF 19-3 (Adtek/ECS

4

Subcontract). Given that Samaha's claims of indemnity rest on the language of the downstream contracts and given that no party disputes the authenticity of Samaha's attached contracts, the Court will treat these subcontracts as integral.

## III. DISCUSSION

Samaha sued Adtek and ECS alleging contractual indemnity (Count I), breach of contract (Count II), implied indemnity (Count III), and contribution (Count IV), ECF 37, at 5–7, seeking sums for which Samaha may be adjudged liable to DC Water. Both ECS and Adtek moved for all counts against them to be dismissed. *See* ECFs 45, 46. For the reasons indicated below Adtek's motion to dismiss certain counts against it in Samaha's Complaint is GRANTED in part and DENIED in part, and ECS's motion to dismiss all counts against it in Samaha's Complaint is GRANTED.

### A. Adtek's Motion to Dismiss

Adtek seeks dismissal of Counts II, III, and IV of Samaha's Crossclaim. ECF 45-1, at 1. Adtek did not seek dismissal of Count I. *See id.* The Court discusses each Count in turn.

#### 1. Count II (breach of contract)

Adtek argues Samaha's Count II fails to meet the prima facie elements of a breach-of-contract claim. ECF 45-1, at 1. Specifically, Adtek claims "Samaha fails to allege facts showing a breach of a duty by Adtek []or how the unalleged breach caused any damages to Samaha." ECF 45-1, at 3 (citing ECF 37 ¶¶ 26–29). Adtek primarily argues that "Samaha fails to allege any facts with certainty and definiteness to show a breach of the parties' contract by ADTEK." ECF 45-1, at 4. Samaha counters that this "argument fails to account for the incorporation of DC Water's allegations in its First Amended Complaint into Samaha's Amended Cross-Claim." ECF 52, at 4 (citing ECF 37 ¶ 15).

The incorporated allegations, when construed in Samaha's favor, sufficiently plead a breach of contract claim. The duty Adtek owned Samaha was "to perform a Phase I ESA for Samaha in accordance with industry standard." ECF 52, at 5. "Adtek contracted this duty to ECS who in turn is alleged to have failed to discover numerous adverse environmental conditions breaching its contractual duty to Adtek." ECF 52, at 5. DC Water alleged that the Phase I ESA was not conducted according to industry standard. *See* ECF 1-2 (including a certificate from an expert that the services "failed to meet the applicable standard of care"). Because ECS allegedly conducted the Phase I ESA below the requisite standard of care, and because Adtek had an obligation to have the Phase I ESA performed in accordance with industry standard, Samaha argues, Adtek breached its contractual duty to Samaha. *Id.* Adtek has provided no counterargument on this point, and the Court agrees with Samaha that these allegations sufficiently plead a breach of contract claim. Adtek's motion to dismiss Count II of Samaha's crossclaim is **DENIED**.

2. Count III (implied indemnity)

Next, Adtek argues that Count III fails as a matter of law because an express indemnity provision supersedes any claim of implied indemnity, ECF 45-1, at 3 (citing ECF 37 ¶¶ 16–22), and because the common law tort of implied indemnity is not cognizable in a purely contractual dispute. ECF 45-1, at 4–6.

Maryland law recognizes a few types of indemnification, including express contractual indemnity and indemnity that arises by implication, either of fact or of law.[2] *Pulte Home Corp. v. Parex, Inc.*, 942 A.2d 722, 730 (Md. 2008); *Hanscome v. Perry*, 542 A.2d 421, 426 (Md. App.

---

[2] A federal court sitting in diversity applies the substantive law of the state in which it sits. *Megaro v. McCullum*, 66 F.4th 151, 159 n.4 (4th Cir. 2023) (citing *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004)). Accordingly, the Court applies Maryland's substantive law in considering the present motions.

1988) ("A right of indemnification can arise by express agreement or by implication."). Samaha asserts that it has stated a viable claim of indemnity by implication against Adtek because as between Samaha and Adtek, Adtek is more culpable for ECS's alleged breach than Samaha is. ECF 52, at 6.

Generally, an implied right of indemnification is inappropriate when a contract contains an express indemnification provision. In *National Labor College, Inc. v. Hillier Group Architecture New Jersey, Inc.*, 739 F. Supp. 2d 821, 831 (D. Md. 2010), the Court considered the same argument, and applying Maryland law, determined that the inclusion of an express indemnification provision precludes claims for implied indemnity. *Id.* ("[I]mplied terms of a contract are utilized only in order to supply the place of a missing express term; therefore, where an express term exits, it negatives an implied inconsistent term relating to the same aspect of the contract." (quoting *Myers v. Kayhoe*, 892 A.2d 520, 527 (Md. 2006))); *see also Ulico Cas. Co. v. Atl. Contracting & Material Co.*, 822 A.2d 1257, 1266 (Md. App. 2003), *aff'd*, 844 A.2d 460 (Md. 2004) ("When the surety and the principal have entered into an express indemnity agreement governing their rights, however, courts should not resort to implied indemnity principles to determine those rights."). While some out-of-district courts permit implied indemnification claims to proceed alongside contractual indemnification claims, "this Court has repeatedly held that allowing such claims to proceed in tandem would be 'incongruent.'" *Sand Canyon Corp. v. Bank of N.Y. Mellon*, Civ. No. GLR-19-2815, 2021 WL 3172274, at *8 (D. Md. July 27, 2021) (quoting *Nat'l Lab. Coll., Inc.*, 739 F. Supp. 2d at 831) (collecting cases).

In this case, neither Adtek nor Samaha dispute the express contractual indemnity provision that makes up Samaha's Count I. ECF 37, at 5. Samaha included the indemnity provision between DC Water and Samaha in its Complaint. *See* ECF 37 ¶ 16. The indemnity

7

provision, provided under Article XIII of the DC Water-Samaha contract in a section entitled "INDEMNIFICATION" stated:

> The Consultant shall indemnify and save harmless the Authority and all of its officers, directors, agents, servants and employees against any and all claims or liability arising from or based on, or as a consequence or result of, any negligent act, error, omission or fault of the Consultant, its employees, or its subcontractors in the performance of, or connection with any services required, contemplated, or performed under this Agreement; and the Consultant shall indemnify and save harmless the Authority and all of its officers, directors, agents, servants and employees, against any and all claims or liability arising from or based on, or as a consequence or result of, any act of approval, inspection, supervision, or acceptance, or any failure to approve, inspect, supervise or accept, by the Authority and any of its officers, directors, agents, servants or employees, where the act of approval, inspection, supervision, or acceptance, or failure to approve, inspect, supervise or accept, causes or contributes to any negligent act, error, omission, or fault of the Consultant, its employees, or its subcontractors in the performance of, or in connection with any services required, contemplated or performed under the Agreement; further the Consultant shall indemnify and save harmless the authority and all of its officers, directors, agents, servants and employees against any and all claims or liability a rising from or based on, or as a consequence or result of, the breach of any material provision of this Agreement. Monies due or to become due to the Consultant under the agreement may be retained by the Authority as necessary to satisfy any outstanding claim which the Authority may have against the Consultant regardless of whether or not any damage resulting from the Consultant, its employees, or its subconsultants acts, omissions or default is caused in part by the Authority.

*Id.* These terms and conditions were adopted in Samaha's contract with Adtek. ECF 37 ¶ 19; ECF 19-2, at 13 (The Terms and Conditions of Samaha's contract with DC Water are part of this agreement with hourly rates specified in the attached Hourly Rate Schedule. Samaha will send Terms and Conditions for the contract for ADTEK's review and acceptance.").

Samaha has provided no argument as to why this express provision does not preclude implied indemnification, instead arguing only that fairness would support its claim. ECF 52, at 6. The Court's precedent, however, supports that Samaha's Count III must fail and Adtek's motion to dismiss Count III is **GRANTED**.

8

### 3. Count IV (contribution)

Finally, Adtek argues Count IV fails as a matter of law because a right of contribution is only available to joint tortfeasors and neither Samaha nor Adtek owed a duty directly to DC Water. ECF 45, at 6. Samaha counters that the existence of a duty is a question of law for the court and that the breach of a contract is a violation of a duty imposed by law, providing the injured party the choice of remedies. ECF 52, at 7 (citing *Jones v. Hyatt Ins. Agency, Inc.*, 7441 A.2d 1099, 1107 (Md. 1999) and *Jacques v. First Nat'l Bank*, 515 A.2d 756, 758 (Md. 1985)).

The Uniform Contribution Among Joint Tort-Feasors Act ("UCATA") of the Maryland Annotated Code governs claims for contribution. Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 3-1401 *et seq.* The UCATA provides that a right of contribution exists only among joint tort-feasors. CJP § 3-1402(a); *Montgomery Cnty. v. Valk Mfg. Co.*, 562 A.2d 1246, 1253 (Md. 1989) ("Contribution rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds."). "Joint tort-feasors" are "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." CJP § 3-1401(c). *see also Gables Constr., Inc. v. Red Coats, Inc.*, 228 A.3d 736, 754 (Md. 2020) ("[C]ontribution under the UCATA as enacted in Maryland is predicated on a wrongdoer's direct liability to the plaintiff.") (quoting *Montgomery Cnty. v. Valk Mfg. Co.*, 317 Md. 185, 199, 562 A.2d 1246, 1253 (1989))).

As a general rule, "where an injured person has no tort action against a third person, defendant cannot join them in a third party action." *S. Md. Elec. Co-op., Inc. v. Booth & Assocs., Inc.*, Civ. No. HAR 88-547, 1989 WL 85060, at *1 (D. Md. July 25, 1989); *see also* CJP § 3-1401(b) ("'Injured person' means any person having a claim in tort for injury to person or property."). Because the right of contribution must sound in tort, Samaha has alleged that Adtek

9

owed DC Water a duty in tort and breached that duty via negligence. ECF 52, at 7. Notably, DC Water originally brought a negligence claim against Adtek and ECS, and later withdrew those claims. *See* ECF 42, at 5.

Generally speaking, "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961). There are two major factors courts consider when determining whether a tort duty can be recognized in addition to a contractual obligation: (1) the nature of the harm and (2) the nexus between the parties. *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759–60 (Md. 1986). "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." *Id.* An intimate nexus "is satisfied by contractual privity or its equivalent." By contrast, where the risk is higher, and personal injury may occur, the requirements for strict privity are loosened. *Id.*

In this case, no one disputes that the loss DC Water experienced was economic. *See* ECF 37 ¶ 10. The question of law is thus whether, in the context of a complex construction contract, there exists an intimate nexus between the injured party, DC Water, and the purported joint tortfeasor, Adtek. The Supreme Court of Maryland has already answered this question and held that absent privity, there is no duty owed and thus, no action in tort. In *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, the Supreme Court of Maryland considered the application of the economic loss rule to the construction industry and held there was sound logic in barring negligence claims for purely economic damages against design professionals in complex construction projects absent privity. 155 A.3d 445, 459 (Md. 2017). This conclusion was also informed by the fact that "the construction industry is governed by a network of often-

complicated contracts," *id.* at 458, where "parties have sufficient opportunity to protect themselves (and anticipate their liability) in negotiating these contracts," *id.* at 460. Additionally, important to the Supreme Court of Maryland were the public policy implications of imposing a tort duty on design professionals that would likely correlate with an increase in project costs and a rise in prices for governmental entities. *Id.* at 626–27.

DC Water is an "independent authority of the District [of Columbia] government." D.C. Code Ann. § 34-2202.02(a) (West) (noting it is a corporate body, with "a separate legal existence within the District government"). Its funding is included the District's annual budget. *See* D.C. Code. Ann. § 1-204.45a. Thus, similar to *Balfour Beatty Infrastructure, Inc.*, "the public purse" warrants special consideration. 155 A.3d at 461. This consideration weighs against imposing a tort duty on design professionals, as it "will likely correlate with an increase in project costs and with a corresponding rise in price for government entities." *Id.*; *see also Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988) (noting the "imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price."); *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 247 (Tex. 2014) ("[I]mposing the risk of economic loss on the architect requires the architect to pass the cost along to the owner."); *Berschauer/Phillips Const. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986, 992 (Wash. 1994) ("If tort and contract remedies were allowed to overlap, certainty and predictability in allocating risk would decrease and impede future business activity. ... The fees charged by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided for in the contract.").

11

The Court finds *Balfour* instructive, if not dispositive. Due to the lack of privity between DC Water, an independent corporate body of the District's government, and Adtek, a subcontractor providing engineering support on a complex construction project, the Court finds Adtek did not owe a duty in tort to DC Water. *See S. Maryland Elec. Co-op., Inc.*, 1989 WL 85060, at *2 (holding engineers could not sue steel pole manufacturer for contribution due to purely economic nature of loss and lack of intimate nexus); *Hanover Ins. Co. v. Engineered Sys. All., LLC*, Civ. No. 15-00112-PX, 2019 WL 1002603, at *9 (D. Md. Mar. 1, 2019) (dismissing claim for contribution where only claims sounded in contract, and therefore there was no tort liability to be found amongst "joint tort-feasors"); *Hanover Ins. Co. v. Engineered Sys. All., LLC*, Civ. No. 15-00112-PX, 2019 WL 1002603, at *9 (D. Md. Mar. 1, 2019) ("Breaches of contract alone do not give rise to contribution precisely because finding a breach does not render the parties joint tortfeasors." (quoting *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 282 (1996))). As such, Samaha's claim for contribution against Adtek must fail because Samaha cannot allege that it and Adtek were joint tortfeasors. Count IV against Adtek is **DISMISSED**.

In sum, Adtek's motion to dismiss Counts III and IV is granted, and Adtek's motion to dismiss Count II is denied.

### B.  ECS's Motion to Dismiss

ECS seeks dismissal all counts against it in Samaha's Crossclaim. ECF 46-1, at 3. The Court addresses each of ECS's arguments in turn.

#### 1.  Count I (contractual indemnity)

Samaha has alleged an indemnity relationship between itself and Adtek via the incorporation of the Terms and Conditions of the DC Water/Samaha Contract. ECF 37 ¶ 19. Adtek does not contest this. ECF 44 ¶ 13. However, Samaha goes a step further in suggesting

12

that the incorporated provisions indicate that Samaha has a right to indemnification against both Adtek and ECS. ECF 37 ¶ 22. As explained below, Samaha has not alleged enough to make this conclusion plausible.

The indemnification clause refers to two parties, the Authority, and the Consultant. *See* ECF 37 ¶ 15. The Consultant agreed to "indemnify and save harmless the Authority . . . against any and all claims or liability arising from or based on . . . any negligent act, error, omission or fault of the Consultant, its employees, *or its subcontractors* in the performance of . . . any services required, contemplated, or performed under this Agreement." ECF 37 ¶ 15 (emphasis added). The plain language of the indemnification clause indicates the Consultant agreed to pay the Authority for its subcontractors' mistakes—not that the subcontractors agree to pay the Authority directly. Given Samaha's reading of the indemnification clause is not reasonable, the Court need not award deference to its assertion of a contractual right to indemnity against ECS directly.

ECS's motion to dismiss Count I of Samaha's crossclaim is therefore **GRANTED** without prejudice.

    2.    <u>Count III (implied indemnity)</u>

ECS argues that implied indemnity claims only sound in tort, not contract. ECF 46, at 8–9. ECS argues that because it is not liable to DC Water in tort, implied indemnification is unavailable. *Id.* at 8. ECS highlights that DC Water has withdrawn its negligence claim against ECS, *see* ECF 42, at 8, and as such, ECS cannot be found liable against DC Water by tort. *Id.* at 8–9. Samaha argues that ECS is more at fault than Samaha and so should therefore be responsible for indemnifying Samaha under principles of equity that ground implied indemnification actions. ECF 52, at 5–6.

In Maryland, there are two types of implied indemnity: implied indemnity of fact and implied indemnity of law. *Pulte Home Corp.*, 942 A.2d at 730–31. Only the latter form of indemnity is limited to tort actions. *See id.* at 730–31 (citing *Franklin v. Morrison*, 711 A.2d 177, at 182 (Md. 1998)) (noting a right to indemnity may be an equitable one implied by law, which a is form of indemnity that may exist between persons liable for a tort). However, the former type, indemnity of fact, does permit implied indemnity in contractual claims. *See id.* Still, there are limits to when indemnity can be implied in fact. *Id.* "[A] contractual right to indemnification will only be implied when there are unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility . . . or when there is a generally recognized special relationship between the parties." *Id.* at 730 (quoting *Araujo v. Woods Hole, Martha's Vineyard*, 693 F.2d 1, 2–3 (1st Cir. 1982)).

In this case, Samaha does not specifically identify which type of implied indemnity it seeks, *see* ECF 37, at 6–7; ECF 53, at 5, though it appears Samaha is seeking implied indemnity against ECS based in shared tort liabilities. *See* ECF 53, at 6 (referencing joint "tortfeasors"). In order for Samaha's claim to survive a motion to dismiss on this basis, the party against which indemnification is sought must be liable to the injured party in tort. *Heritage Harbour, LLC v. John J. Reynolds, Inc.*, 795 A.2d 806, 810 (Md. Ct. Spec. App. 2002); *Aerovation, Inc. v. Airtec, Inc.*, Civ. No. TDC-18-2959, 2019 WL 3883617, at *6 (D. Md. Aug. 16, 2019). "A tort-based indemnification right will be found only where 'there is a great disparity in the fault of the two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other.'" *Aerovation, Inc.*, 2019 WL 3883617, at *6 (quoting *Hanscome v. Perry*, 542 A.2d 421, 426 (Md. App. 1988)). However, ECS argues that Samaha has not alleged that ECS and Samaha were joint tortfeasors. ECF 46-1, at 9.

14

ECS analogizes this case to *Aerovation, Inc. v. Airtec, Inc.*, Civ. No. TDC-18-2959, 2019 WL 3883617 (D. Md. Aug. 16, 2019), a case in which the Court held a down-stream subcontractor was not liable to indemnify an upstream party when there was no privity. ECF 46-1, at 9. There, the plaintiff (a supplier of materials) contracted with Airtec (a purchaser and owner) for a project related to the modification to an aircraft. *Id.* at *1. The plaintiff delivered materials and then Airtec contracted with Aery (a general contractor) for installation. *Id.* Aery subsequently subcontracted with Stevens for labor (a subcontractor). *Id.* Ultimately, the plaintiff-supplier sued the subcontractor, who only had a contractual relationship with the general contractor, Aery. *Id.* The Court held the plaintiff could not sue Stevens under a theory of implied indemnity, either of fact or of law. *Id.* at *7.

In discussing the implied indemnification claim of law, which is sometimes characterized as the equitable tort of implied indemnity, the Court held a plaintiff could not sue a downstream subcontractor when the injured party was not suing the subcontractor in tort, *Aerovation, Inc.*, 2019 WL 3883617, at *6. Similarly, here, DC Water, the injured party, is no longer suing ECS in tort. *See* ECF 42, at 8. Because DC Water withdrew all tort-based claims against ECS, ECS cannot be held liable as the more culpable joint tortfeasor with Samaha. *See id.*

Even if this Court were to look to the other form of implied indemnification recognized by Maryland law, implied indemnity of fact, Samaha has failed to state a claim for relief because there is no contract between Samaha and ECS. *See Aerovation, Inc.*, 2019 WL 3883617, at *6 (noting "[t]he circumstances under which indemnification can be implied are limited"). In *Aerovation Inc.*, the Court quickly disposed of the plaintiff's claim for implied contractual indemnity because there was no contract between the plaintiff and the downstream subcontractor. *Id.* at *7. A very similar situation is present here because Samaha, who supplied

15

certain services for DC Water's Project, is suing a downstream subcontractor, ECS, *see* ECF 37, at 6–7, even though Samaha and ECS are not in contractual privity, ECF 37 ¶ 19; ECF 19-2.

The general rule is that implied indemnity of fact is unavailable where there is no contract between the parties from which one could imply a special relationship of indemnity. *See Hanscome*, 542 A.2d at 428 (noting parties had no contract from which a contract-based right of indemnification could arise). Samaha fails to provide any basis to conclude that such special circumstances exist. *See* ECF 53, at 5. At most, Samaha has alleged that "[b]y virtue of the flow down of the terms and conditions from Samaha's contract with DC Water," Adtek and ECS agreed to indemnify Samaha. ECF 37 ¶ 22. However, there is nothing in the Samaha/Adtek Subcontract, for instance, that indicates the creation of a special contractual relationship between Samaha and any downstream contractors. *See* ECF 19-2. Additionally, the Adtek/ECS Subcontract does not even name Samaha, undercutting the inference that ECS intended to indemnify all upstream parties. ECF 19-3. Without more, Samaha's claim that the terms and conditions that labeled Samaha as the "Consultant" and DC Water as the "Authority" automatically flowed down and constituted a contractual agreement for downstream contractors to indemnify Samaha is insufficient to state a plausible claim for relief, as it does not nudge Samaha's claim across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 570; *Aeronation Inc.*, 2019 WL 3883617, at *7 (dismissing similar claim of implied indemnity under a similar factual scenario on a motion to dismiss). ECS's motion to dismiss Count III against it is **GRANTED** without prejudice.

        3. <u>Count IV (contribution)</u>

Finally, ECS argues Samaha has failed to state a claim for contribution. For the same reasons indicated above in relation to Samaha's contribution claim against Adtek, the Court finds

Count IV must fail against ECS as well. *See supra* Section III.A.3. ECS owes no duty in tort to DC Water and therefore, Samaha cannot successfully allege that Samaha and ECS are joint tortfeasors. Samaha's Count IV against ECS is dismissed.

In sum, ECS's motion to dismiss Samaha's crossclaim against it is GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Adtek's motion to dismiss Samaha's Crossclaim, ECF 45, is **GRANTED in part** and **DENIED in part**. Samaha's Counts III and IV are dismissed as against Adtek without prejudice. ECS's motion to dismiss Samaha's Crossclaim, ECF 46, is **GRANTED**. Samaha's Counts I, III, and IV are dismissed as against ECS without prejudice. A separate implementing Order will issue.

Dated: April 9, 2024

                                                           /s/
                                         Brendan A. Hurson
                                         United States District Judge